ROBERT MCKINLEY

v.

THE WILMINGTON STAR MINING CO. OF COAL CITY.

</div>

1.   PRACTICE—STIPULATION TO ABIDE EVENT OF THE SUIT.—This suit was selected from among a number for the same cause of action, as a representative case, and a stipulation made that all the said causes then pending on appeal from a justice, should abide the final determination of this case.   Afterwards the defendant dismissed its appeal from the justice in this case, assigning as special reason therefor that the stipulation was intended to submit only one controverted question, and that it had been ascertained that such question did not arise in this case.   *Held*, that the stipulation had become part of the record, and by assigning a special reason for dismissing the appeal, the defendant had recognized the effect of the stipulation, and it had no right to dismiss its appeal.

2.   STIPULATION CONSTRUED.—A stipulation filed in a cause that such cause may be tried, and the event of that suit should control the judgment in other pending suits of the same character, is not merely an independent, executory agreement, but operates presently to affect the status of the case itself, and invests the plaintiff with rights in respect to its conduct, which he otherwise would not have had, and of which neither the opposite party nor the court can lawfully divest him.

3.   PLAINTIFF'S RIGHTS UNDER STIPULATION.—It will not do to say that no injury results to plaintiff by the dismissal of the appeal, because he thereby obtains the amount of his judgment in the justice's court and his costs on appeal, for it cannot be known that he would not obtain a greater judgment upon the trial of the appeal.   Nor can it be said that the plaintiff has no legal interest in the effect upon the other cases of an enforcement of the stipulation.

4.   COURT SHOULD ENFORCE STIPULATION.—If the effect of the dismissal

of the appeal was to work an injury to the other cases covered by the stipulation, it was the duty of the court to compel a compliance with its terms, unless good cause to the contrary was shown. The fact that the defendant subsequently learned that a certain element of controversy in the other cases did not enter into this case, is not a sufficient cause for refusing to abide by the stipulation, since the stipulation was general in its terms, covering all disputed questions.

5.  WAIVER OF STIPULATION.—The stipulation is not waived by the making of a subsequent agreement that the cause should be continued until the determination of another suit.

APPEAL from the County Court of Will county; the Hon. BENJAMIN OLIN, Judge, presiding.    Opinion filed December 4, 1880.

Mr. WILLIAM MOONEY and Messrs. HALEY & O'DONNELL, for appellant; that the stipulation is supported by a good consideration, cited Buchanan v. International Bank, 78 Ill. 500.

It is not enough, to avoid a contract, that one of the parties should have been mistaken; the mistake must be mutual: Sutherland v. Sutherland, 69 Ill. 481; Wilson v. Byers, 77 Ill. 76; Emory v. Mohler, 69 Ill. 221.

The intention of the parties must be gathered from the written contract:   Kimball v. Custer, 73 Ill. 389.

Mr. GEO. S. HOUSE and Mr. D. J. SCHUYLER, for appellee; that in construing a written agreement, the surrounding circumstances are proper subjects of inquiry, cited Parmalee v. Hambleton, 24 Ill. 605; Sandford v. Rawlings, 43 Ill. 92; Nash v. Towne, 5 Wall. 689; Shore v. Nelson, 9 Clark & F. 559; Barreda v. Silsbee, 21 How. 161.

PLEASANTS, J.  This suit by appellant, and more than a hundred others by different parties, were brought against the appellee before justices of the peace, in Will county, for wages claimed to be due them respectively as employes in its mines. Judgment was recovered by each of said plaintiffs, and appeals taken by the defendant.   In some of the cases there was a contract in writing between the parties, and in others there was not.   By these contracts, which were alike in their terms, it was

among other things agreed that the miners would work for the company in its mines from June 1, 1876, to May 1, 1877, and abide by, adhere to and observe the rules and regulations thereto appended, which are made a part of the contract, and abide by and observe all other rules and regulations promulgated from time to time by the said company, for the purpose of regulating mining and other employment in and about the coal mines of said company; and that they would not stop work, join any "strike" or combination, for the purpose of obtaining or causing the company to pay their miners an advance of wages, or pay beyond what is specified in the contract, nor in any way aid, abet or countenance any such "strike," combination or scheme for any purpose whatever, during the time specified in the first clause of said contract. And among the rules appended was the following: "IV.—Any employe may be discharged at any time without previous notice; and any employe wishing in good faith to leave the company's service, may do so at any time without giving previous notice, but all arrearages of pay will be due and payable on the next regular pay-day after leaving said employment: *Provided*, when any employe is discharged by the company, a due bill maturing on the next pay-day, will be given him for his balance."

While these appeals were pending in the circuit court, on the 16th day of January, 1878, the several plaintiffs and the common defendant by their respective attorneys, selected and designated for trial a case from each of said two classes, of which the case at bar was one, representing the class in which there was a written contract between the parties—and entered into a stipulation containing among others the following provisions: "And it is further stipulated and agreed, that upon the trial of said two causes or either of them, if a judgment shall be rendered therein against the said plaintiff of 'No cause of action and for the costs of suit,' then in that case the court is hereby authorized and empowered to enter a like judgment without trial against the said several named plaintiff's in all the remainder of the above entitled causes of the same class of that in which such judgment was rendered upon such trial. And further, that if upon the trial of said two causes or either

of them, a judgment shall be rendered against the defendant and in favor of said plaintiff therein, then in that case a like judgment shall be rendered by the said circuit court without trial, and entered of record against the said defendant and in favor of said plaintiff in each of the remaining causes of the same class of that which judgment shall be rendered on such trial for the amount due each said several plaintiff's named in the said remaining causes, as is shown by the pay-roll of the said defendant (less all legal offsets) at the time such judgment is rendered and entered of record, together with costs of suit, such pay-roll to be exhibited by said defendant for such purpose."

It further provided for the prosecution by either party in said two cases, or either of them, of appeals or writs of error without proceeding in the other cases of the same class until the final determination of such appeal or writ of error, which they were to abide, and declared it to be "the intent and design thereof to settle and determine fully and finally all the questions involved in each and all of said suits by the trial and determination of the two thereinbefore especially named."

It was also thereby agreed that said two causes should be tried at the term of court then being held in case they should be reached for trial in the regular call of the docket; and that said stipulation should be filed with the clerk of said court and made part of the record in the other of said two causes, and should apply and extend to each and all of the said pending causes.

These two cases remained on the docket of the circuit court until the January term, A. D., 1880, when on the application of the defendant the venue was changed to the county court of said county.

At the March term of said court, by agreement of the respective attorneys, the case at bar was set for trial on the 7th of April, at which day the plaintiff was ready, but the attorney for the defendant entered a motion to dismiss the appeal, and supported the same by affidavits of himself and others, the substance of which will hereinafter be stated; and the court sustained said motion and dismissed the appeal, against objec-

tion and counter affidavit on behalf of the plaintiff, who there-upon prayed an appeal to this court.

It is here argued for appellee that its dismissal of the appeal was at most but a breach of contract, for which appellant has no other remedy than an action at law for damages, a bill for specific performance, or a bill to obtain a construction of the stipulation; and that this court cannot review the action of the county court in the premises.

We have seen that the defendant below did not assume to dismiss the appeal of its own mere motion, as a defendant appellant ordinarily may, but attempted to show special cause.

This was a recognition of the effect of the stipulation to divest it of that original right. And we see no reason why it might not make a binding agreement to that effect. Being filed in the case and made part of the record, it was not merely an independent, outside and executory agreement, for a breach of which full compensation might be made in damages, but operated presently to affect the status of the case itself and invest the plaintiff with a right in respect to its conduct which he would not otherwise have had, and which neither the opposite party nor the court could lawfully divest or disregard. To this extent it was executed, and such was clearly the intention of the parties to it.

Again it is said that the order of the county court worked no injury to the plaintiff; that it left to him his judgment in the justice's court undiminished and gave him his costs on the appeal which was all he could have obtained by trial—that a reversal of said order will determine no more than that he was entitled to a judgment for the amount due him, which he already has; that it cannot affect the merits of the other cases, and if it could, the appellant here has no interest in them to defend.

We cannot know that upon a trial of the appeal the plaintiff would not have recovered more than he did in the justice's court. Nor that he has no legal interest in the effect upon the other cases of an enforcement of this stipulation. The presumption would be to the contrary, since manifestly that effect formed a large part of the consideration which induced it; and

his obligation of good faith towards the plaintiffs in these cases would alone justify him in insisting upon its observance.

But, further, if the effect of the stipulation was as we have above indicated, it was the duty of the defendant, without inquiry into the consequences, to comply with its provisions, and of the court to compel such compliance unless for good cause shown, which must be other than the mere will of said defendant.

And this brings us to the question whether such cause was shown.  Appellee claimed in the county court and argues at length here that the stipulation became abrogated by the impossibility of its execution according to the intention of the parties.  As set forth in the affidavits filed in support of the motion to dismiss the appeal and in the argument here the propositions on which this alleged impossibility rests are substantially these:  That when said stipulation was entered into it was understood that defendant claimed that the plaintiffs who had not signed the written contract were nevertheless governed by it, and that the defense intended to be made in all the cases was that the plaintiff had quit the defendant's employment in bad faith—that what would constitute a quitting in bad faith is defined in the contract to be a quitting to join or to aid, abet or countenance a "strike," and is therefore limited to that definition—that defendant relied for the maintenance of the issue on its part solely upon the belief and understanding that the plaintiff in this case quit about the 6th of April, 1877, in aid of the strike then inaugurated, and that a few days before the entry of its motion to dismiss the appeal he ascertained for the first time that said plaintiff had in fact quit on or before the 10th of March, and before said strike was inaugurated or contemplated; and therefore, the conclusion is, his case would not present the issue of quitting in bad faith, which it was intended to try as the controlling issue in all the cases.

Clearly, the premises do not warrant this conclusion.  They do not even tend to show that the issue stated could not be presented by this case, though they make it very highly probable that it would be found against the appellee.

But besides, they do not import any conclusion or under-
standing on the part of the plaintiff that he quit about the 6th
of April. His attorney, in his affidavit in opposition to the
motion below, expressly denies any such understanding. A
mistake of fact by only one of the parties to the agreement
would constitute no ground for his refusal to perform it. Nor
is it true that under the mining contract, joining, or aiding, or
countenancing a strike is the only possible manifestation of
bad faith in quitting.

According to its own showing it appears that the com-
pany having agreed that the judgment in all the cases shall
depend upon the result of a trial or appeal of the one at bar,
upon discovering afterwards to its surprise and disappointment
that in the one so selected for trial the facts are against it, for
that reason alone, seeks to avoid the trial and thereby also the
agreement, by dismissing its appeal. The reason is not suffi-
cient.

Lastly, it is insisted that the stipulation in question was
waived by or merged in an agreement at the same term, but
subsequently made, to continue this case to await the decision
of the Appellate Court in another of like character, which had
been tried and appealed to said court.

The agreement was that if the judgment in that case (which
was for the plaintiff) should be affirmed in the Appellate
Court, then judgment was to be entered in this, against the
defendant for the amount to be ascertained as provided by
the stipulation in question, and costs; and if said judgment
should be reversed, then this case was to stand for trial. The
judgment in that case was reversed at the June term, 1878,
and consequently this cause thereafter stood for trial under the
original stipulation as though the last agreement had not been
made. There is no incompatibility between an agreement
that a case shall be tried and another subsequently made that
it shall stand continued for a certain time.

On the whole, we are of opinion that the stipulation was
fair, mutual, binding, and to be enforced in the case in which
it was made, and that it was error to allow the appeal to be
dismissed for the cause shown in opposition to its provisions

and the objection of plaintiff. Even if the determination of the question had been in the discretion of the county court, the exercise of that discretion in the manner and upon the grounds appearing by this record would have been in a legal sense abusive. But it was not a matter of discretion. The case falls within the principle announced in Coulter v. Green, 43 Ill. 277.

The judgment is reversed and the cause remanded.

Reversed and remanded.